IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEOLATTANA TOOTOO SAPHILOM,
    Plaintiff,

v.                                                    Civil Action No. 3:23cv562

FAIRFAX COUNTY POLICE,
et al.,
    Defendants.

## **OPINION**

Peter Sakda Kingkeo ("Kingkeo") died on May 21, 2021. His niece, Keolattana Tootoo Saphilom ("Saphilom"), the plaintiff, filed this action against the Virginia State Police ("VSP") and the Fairfax County Police Department ("FCPD") on May 16, 2023, alleging that they failed to properly investigate Kingkeo's cause of death. On February 28, 2024, Saphilom filed an Amended Complaint[1] that added the Office of the Chief Medical Examiner ("OCME") and Reston Hospital Center ("Reston Hospital") as defendants, alleging that they made false statements in certifying Kingkeo's cause of death.

In sum, Saphilom alleges that the defendants: (1) conspired to deprive Saphilom of her civil rights in violation of 42 U.S.C. § 1985; (2) deprived Saphilom of her civil rights while under color of state law in violation of 18 U.S.C. § 242; and (3) covered up their actions in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.[2] Saphilom also generally alleges violations of the Fourth, Fifth, and Fourteenth Amendments under

---

[1] Saphilom filed an additional Amended Complaint to redact sensitive information about third parties to this case. (ECF No. 31.) The factual assertions and legal claims remained unchanged in the refiled Amended Complaint.

[2] The Court construes this as a civil RICO claim brought under 18 U.S.C. § 1964.

42 U.S.C. § 1983 and argues that the defendants committed fraud, intentionally inflicted emotional distress, and violated several state statutes. The defendants have moved to dismiss Saphilom's claims for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

To the extent Saphilom's claims seek criminal prosecution under 18 U.S.C. § 242, the Virginia Code, or any other criminal statute, the Court will dismiss those claims because private individuals may not enforce criminal statutes. With respect to her remaining state statutory claims, the Court will dismiss those claims because Saphilom has not identified a procedural vehicle under which she can assert those claims. Because the Court does not have jurisdiction to hear Saphilom's claims against VSP and OCME, and Saphilom cannot sue FCPD, the Court will grant the motions to dismiss as to those defendants. And because Saphilom lacks standing to bring her claims against Reston Hospital, the Court will also grant Reston Hospital's motion to dismiss. Lastly, the Court declines to exercise its supplemental jurisdiction over Saphilom's state common law claims against all four defendants.

## I. <u>FACTS ALLEGED IN THE COMPLAINT</u>

On May 21, 2021, Kingkeo's wife found Kingkeo unconscious at home and called 911. Paramedics transported Kingkeo to Reston Hospital, where he died later that evening. A doctor told an FCPD officer that Kingkeo suffered from cardiac arrest and that Reston Hospital would need to hold Kingkeo's body to determine what triggered the cardiac arrest.

On May 23, 2021, Saphilom called FCPD to request an autopsy and an investigation into Kingkeo's death. Due to turbulent family history between Kingkeo's wife and his extended family, Saphilom believed that Kingkeo's wife may have played a role in his death. Saphilom told the police that Kingkeo's wife often neglected his medical needs and that she spoke of his finances

2

shortly after his death. FCPD said that they could not investigate Kingkeo's death unless they had reason to believe Kingkeo died under "suspicious" circumstances. (ECF No. 31-3, at 3.)

A doctor at Reston Hospital signed Kingkeo's death certificate on May 25, 2021, and listed his official cause of death as "atherosclerotic heart disease."[3] (ECF No. 31-9.) OCME ultimately conducted an autopsy at Saphilom's request on June 2, 2021. Saphilom has yet to receive the autopsy report.[4]

Saphilom met with an FCPD officer on June 29, 2021. The officer informed her that "there was nothing to indicate that [Kingkeo's] death was the result of any type of crime" given the cause of death listed on Kingkeo's death certificate. (ECF No. 31-7, at 8.) When the officer refused to investigate further, she contacted the Commonwealth Attorney's Office and the FCPD Chief of Police, telling them that Kingkeo had been murdered. Saphilom does not indicate whether the Commonwealth Attorney's Office or the FCPD Chief of Police responded to these specific communications.

Approximately seven months later, on January 10, 2022, Saphilom contacted VSP regarding potential fraud committed by Kingkeo's widow, now the administrator of Kingkeo's estate. A VSP Special Agent presented Saphilom's claims to an Assistant Commonwealth's Attorney ("ACA") on May 3, 2022. On June 14, 2022, the Special Agent informed Saphilom that

---

[3] The Virginia Department of Health also provided Saphilom with a "Medical Examiner's Certificate" which reflects OCME's review of Kingkeo's body. (*See* ECF Nos. 31-10, 31-11.) The medical examiner signed the certificate on May 25, 2021. The Medical Examiner's Certificate listed Kingkeo's cause of death as "hypertensive and atherosclerotic cardiovascular disease," and listed "diabetes mellitus" as a relevant underlying condition. (ECF No. 31-10.)

[4] Under Virginia law, only a decedent's next of kin may receive an autopsy report. Va. Code Ann. §§ 32.1-127.1:03(D)(24), 32.1-283(C). As part of a separate matter in Fairfax County Circuit Court, Saphilom obtained a subpoena requiring OCME to provide her with the autopsy and toxicology report. OCME had not yet provided the report to Saphilom at the time she filed her Amended Complaint with this Court.

3

the ACA would not investigate her claim due to lack of jurisdiction and insufficient evidence. VSP informed Saphilom on December 13, 2022, that they had closed her case. Saphilom subsequently filed this action.

Saphilom alleges that by failing to investigate Kingkeo's death and signing Kingkeo's death certificate without sufficiently examining his body, the defendants knowingly and unlawfully allowed Kingkeo's widow to improperly gain sole control of Kingkeo's estate. This inflicted emotional, physical, and financial harm upon Saphilom. She seeks $5,000,000 in damages, an investigation into Kingkeo's death, to have Kingkeo's body exhumed for an additional autopsy, and to rebury Kingkeo in a different cemetery.

## II. DISCUSSION

The defendants move to dismiss Saphilom's Amended Complaint. VSP and OCME move to dismiss under Federal Rule of Civil Procedure 12(b)(1), asserting that the Court lacks subject matter jurisdiction due to sovereign immunity. Reston Hospital moves to dismiss because Saphilom lacks standing to bring her claims against Reston Hospital, which the Court construes as a motion to dismiss under Rule 12(b)(1). FCPD moves to dismiss under Rule 12(b)(2), arguing that its status as a *non sui juris* entity bars it from suit.

Before the Court proceeds to the merits of the motions to dismiss, the Court notes that Saphilom proceeds *pro se* in this case. The Court affords *pro se* complaints a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Nevertheless, the Court need not attempt to "discern the unexpressed intent of the plaintiff." *Id.* Furthermore, liberal construction does not excuse a clear failure to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990). Against that standard, and for the reasons below, the Court

will grant the motions to dismiss and will dismiss all claims that Saphilom raises against the defendants.

### A. State Statutory Claims and 18 U.S.C. § 242 Claim

Saphilom seeks criminal prosecution of the defendants under 18 U.S.C. § 242 and Va. Code Ann. §§ 3.2-3218, 18.2-169, 18.2-512. To the extent she seeks to prosecute the defendants under these or any other criminal statute, however, only the government, not private citizens, can institute criminal proceedings against another person. *Doe v. Broderick*, F.3d 440, 447 (4th Cir. 2000) (citing *Cort v. Ash*, 422 U.S. 66, 80 (1975)). As a result, the Court will dismiss these claims against all four defendants.

The Court will also dismiss Saphilom's remaining state statutory claims, such as those under Va. Code. Ann. § 15.2-1704 and § 32.1-285, because she has not identified any procedural vehicle under which she can bring these claims. Saphilom's remaining claims therefore consist of (1) violations of the Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983; (2) defendants depriving Saphilom of her civil rights while under color of state law in violation of 42 U.S.C. § 1985; (3) a civil RICO claim with respect to the defendants covering up their actions; and (4) fraud and IIED ("state common law claims"). The Court addresses Saphilom's remaining federal statutory claims and state common law claims below.

### B. Rule 12(b)(1) Motions

#### 1. Legal Standard

VSP, OCME, and Reston Hospital all argue that the Court lacks jurisdiction over Saphilom's claims against them. When a defendant "urges dismissal on the grounds that the complaint's allegations are insufficient to confer jurisdiction, [the Court] assess[es] the motion under the same standard as one brought under 12(b)(6)." *Ministry of Def. of State of Kuwait v.*

5

*Naffa*, 105 F.4th 154, 159 (4th Cir. 2024). In other words, the Court must "accept the truth of all facts alleged in the complaint and must deny the motion if those facts are sufficient to invoke subject matter jurisdiction." *Id.*

### 2. *VSP and OCME's Motion to Dismiss*

#### a. *State Sovereign Immunity*

First, VSP and OCME argue that state sovereign immunity bars Saphilom's claims against them. Sovereign immunity "is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "State sovereign immunity is 'based on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.'" *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) (quoting *Nevada v. Hall*, 440 U.S. 410, 416 (1979)). "As a general rule, the Commonwealth [of Virginia] is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action." *All. to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005). This immunity extends to state agencies such as VSP and OCME, in addition to the state itself. *See Passaro v. Virginia*, 935 F.3d 243, 245 (4th Cir. 2019); *Carpenters Pension Fund of Balt. v. Md. Dep't of Health & Mental Hygiene*, 721 F.3d 217, 220 (4th Cir. 2013). If state sovereign immunity applies, the Court lacks subject matter jurisdiction to hear the claim. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53, 76 (1996).

Only Virginia's General Assembly may abrogate Virginia's state sovereign immunity. *All. to Save the Mattaponi*, 270 Va. at 455, 591 S.E.2d at 96. "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Id.* The plaintiff must prove "that an unequivocal waiver of sovereign immunity exists

6

and that none of the statute's waiver exceptions apply to [their] particular claim." *Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Virginia's General Assembly has not abrogated the immunity that generally protects both Virginia and its agencies from private suits under 42 U.S.C. §§ 1983 or 1985. *See Jones v. Virginia Commonwealth University*, No. 3:20-cv-792, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021) (noting that Virginia has not waived its sovereign immunity in § 1983 cases); *Sigma Landa Upsilon/Señoritas Latinas Unidas Sorority, Inc. v. Rectors and Visitors of the Univ. of Va.*, 503 F. Supp. 3d 433, 442 (W.D. Va. 2020) (noting that Virginia has not waived its sovereign immunity in § 1985 cases). With respect to her civil RICO claim, Saphilom does not point to any evidence showing that Virginia has waived its state sovereign immunity, nor does she address state sovereign immunity in her response brief. State sovereign immunity thus shields VSP and OCME from Saphilom's claims against them.

### b. Eleventh Amendment Immunity

VSP and OCME also argue that Eleventh Amendment immunity bars Saphilom's claims against them. Eleventh Amendment immunity is narrower than the common law doctrine of state sovereign immunity. *Stewart*, 393 F.3d at 488. "This immunity protects a state's dignity and fiscal integrity from federal court judgments . . . and acts as a limitation on the federal judiciary's Article III powers." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015). Although the Eleventh Amendment provides that a state is immune from suit in federal court brought by "Citizens of another State, or by Citizens or Subjects of any Foreign State," the Supreme Court has extended its applicability to private citizens' suits against their own states. U.S. Const. amend. XI; *see, e.g.*, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). If Eleventh Amendment immunity

7

applies, then the Court lacks subject matter jurisdiction to hear the claims. *Seminole Tribe of Fla.*, 517 U.S. at 53, 76.

A plaintiff may overcome a state's Eleventh Amendment immunity and sue a state in federal court if: (1) the state has expressly consented to suit; (2) Congress has abrogated the state's immunity from suit; or (3) the plaintiff seeks only prospective injunctive relief against the state. *See Garrett*, 531 U.S. at 363; *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). None of these exceptions apply here.

A federal court's test to determine whether a state "has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 427 U.S. 666, 675 (1999) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Courts will find a state has waived immunity if the state invokes federal jurisdiction or if it makes a "'clear declaration' that it intends to submit itself to [federal] jurisdiction." *Id.* at 675–76 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum."). Here, VSP and OCME neither consented to nor invoked this Court's jurisdiction.

Congress may waive states' sovereign immunity if it both "mak[es] its intention unmistakably clear in the language of the statute" and "act[s] pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)). Congress has not abrogated sovereign immunity for states with respect to any of Saphilom's claims. *Goldman v. Northam*, 556 F. Supp. 3d 490, 503 (E.D. Va. 2021) (noting that Congress has not waived states' immunity in § 1983 cases); *Clark v. Md.*

8

*Dep't of Pub. Safety and Corr. Servs.*, 247 F. Supp. 2d 773, 776 n.2 (noting that Congress has not waived states' immunity in § 1985 cases); *Stewart v. Univ. of N.C. Sys.*, 673 F. App'x 269, 270 (4th Cir. 2016) (per curiam) (affirming that the Eleventh Amendment protects state agencies against civil RICO claims).

The doctrine of *Ex parte Young* provides an exception to Eleventh Amendment immunity when the plaintiff seeks injunctive relief against the state. *Ex parte Young*, 209 U.S. at 159–60 (1908). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [against a State], a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted). Here, Saphilom seeks injunctive relief in the form of an investigation into Kingkeo's death, having Kingeko's body exhumed for an additional autopsy, and reburying Kingkeo in a different cemetery. This exception to Eleventh Amendment immunity, however, does not apply because Saphilom's complaint does not allege *ongoing* violations.[5]

VSP and OCME possess both state sovereign immunity and Eleventh Amendment immunity. Accordingly, the Court will dismiss Saphilom's claims against VSP and OCME for lack of subject matter jurisdiction.[6]

---

[5] Although VSP has not investigated Kingkeo's death, it provided Saphilom with its final decision to close her case. Therefore, this inaction does not constitute an ongoing violation.
To the extent that OCME refuses to comply with any subpoenas issued by the Fairfax County Circuit Court, this Court lacks the authority to enforce those subpoenas. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 (1975) (holding that federal courts cannot intervene in state proceedings if the party seeking intervention has "not exhausted [their] state appellate remedies.")

[6] Saphilom also asserts two state common law claims against VSP and OCME. "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, F.3d 106, 109 (4th Cir. 1995) (emphasis in original); *see also* 28 U.S.C. § 1367(c)(3).

### c. *Reston Hospital's Motion to Dismiss*

Reston Hospital contends that Saphilom's claims fail because she does not have standing to sue them. Saphilom's only allegation against Reston Hospital is that it "signed a fraudulent death certificate on 5.5.21, which was used in a [state court] pleading on 10.21.22, in order for [Kingkeo's widow] . . . to become the Estate Administrator in which she used her fiduciary appointment to further abuse [Saphilom] emotionally [and] financially." (ECF No. 31, at 2-3.)

A plaintiff must establish standing "to get in the courthouse door and obtain a judicial determination of what the governing law is." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024). Standing requires that "the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "To establish Article III standing . . . a plaintiff must 'allege (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct'" and that (3) the Court can redress. *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992)). The party invoking federal jurisdiction bears the burden of demonstrating standing. *TransUnion*, 594 U.S. at 430-31 (2021) (citing *Lujan*, 504 U.S. at 561).

Saphilom's claims against Reston Hospital fail at the second step. A plaintiff's injury cannot "'fairly [] be traced to the challenged action of the defendant'" if the injury "'result[ed] from the independent action of some third party not before the court.'" *Bishop v. Bartlett*, 575 F.3d 419, 425 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). Accepting Saphilom's allegation as true that Kingkeo's widow caused his death, any injury to Saphilom

---

Considering the early stage of this litigation, the Court declines to exercise its supplemental jurisdiction over Saphilom's state common law claims against VSP and OCME and will dismiss those claims against them.

10

resulted from the independent actions of Kingkeo's widow, not Reston Hospital. Saphilom does not allege that Reston Hospital knew that Kingkeo's widow would use the death certificate in Kingkeo's estate proceeding, nor does she allege that Reston Hospital knew that Kingkeo's widow used her role as estate administrator to harm Saphilom. In other words, the "'line of causation' . . . is 'attenuated at best.'" *Bishop*, 575 F.3d at 425 (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)). No fairly traceable connection exists between Reston Hospital signing the death certificate and Saphilom's harms. Saphilom, therefore, does not have standing to pursue her claims against Reston Hospital.[7]

### B. Rule 12(b)(2) Motion

#### 1. Rule 12(b)(2) Standard

Finally, the FCPD moves to dismiss Saphilom's claims under Rule 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In considering the Rule 12(b)(2) motion "at such a preliminary stage," the Court gives the plaintiff's allegations "a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018).

#### 2. FCPD's Motion to Dismiss

FCPD argues that its status as a *non sui juris* entity immunizes it from civil lawsuits. Courts lack personal jurisdiction over *non sui juris* entities as these entities do not have capacity for suit.

---

[7] Saphilom also asserts two state common law claims against Reston Hospital. For the reasons described above, the Court declines to exercise its supplemental jurisdiction over Saphilom's state common law claims against Reston Hospital.

*Muniz v. Fairfax Cnty. Police Dep't*, No. 1:05CV466, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005). The law of the state in which the federal court sits determines whether an entity has *non sui juris* status. *See* Fed. R. Civ. P. 17(b)(3). This Court, therefore, must look to Virginia law to determine if FCPD has *non sui juris* status. For operating divisions of governmental entities, such as police departments, Virginia law requires the legislature to affirmatively grant the operating division with capacity for suit. *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir. 1984). The Virginia legislature has not given FCPD independent capacity for suit. Instead, the legislature tied FCPD's legal status with that of Fairfax County. *See* Va. Code. Ann. § 15.2-821 (2005). "Since the Fairfax County Police Department has no legal existence separate and apart from Fairfax County, and the Code of Virginia does not provide that it can be sued as a separate entity, Fairfax County Police Department is not capable of being sued." *Muniz*, 2005 WL 1838326, at *2. Saphilom, therefore, cannot sue the FCPD, and the Court will dismiss her claims against it for lack of personal jurisdiction.[8]

### III. CONCLUSION

To the extent Saphilom's claims seek criminal prosecution under 18 U.S.C. § 242 and the Virginia Code, the Court will dismiss those claims because private individuals may not enforce criminal statutes. The Court also dismisses Saphilom's remaining state statutory claims because she has not identified any procedural vehicle under which she can bring these claims. With respect to Saphilom's remaining claims, the Court lacks sufficient subject matter jurisdiction over VSP and OCME, Saphilom lacks standing to pursue her claims against Reston Hospital, and the Court lacks personal jurisdiction over FCPD. Lastly, the Court declines to exercise its supplemental

---

[8] Saphilom also asserts two state common law claims against FCPD. For the reasons described above, the Court declines to exercise its supplemental jurisdiction over Saphilom's state common law claims against FCPD.

jurisdiction over Saphilom's state common law claims because of the early stage of litigation. Therefore, the Court will grant the defendants' motions to dismiss without prejudice. (ECF Nos. 32, 34, 39.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Saphilom, the *pro se* plaintiff.

Date: 21 November 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge